**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| WILLIE BROWN, )<br>     **Plaintiff,** )<br>          )<br>v.          )<br>          )<br>SCOTT FISHER, J. J. WEBER and )<br>MIAMI COUNTY,     )<br>          )<br>     **Defendants.** )<br>_____) | CIVIL ACTION<br><br>No. 05-2268-KHV |

**MEMORANDUM AND ORDER**

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants arrested him without probable cause and detained him for nine hours in violation of his rights under the Fourth, Fifth, Sixth, Eighth and Fourteen Amendments. This matter comes before the Court on defendant Scott Fisher's Motion For Summary Judgment (Doc. #21) filed September 16, 2005 and defendant Joshua Weber's Motion For Summary Judgment (Doc. #25) filed September 19, 2005. For reasons set forth below, the Court finds that defendants' motions should be sustained.

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome

1

of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets his burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The nonmoving party may not rest on his pleadings but must set forth specific facts. Id. at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51.

The Court affords a *pro se* plaintiff some leniency and must liberally construe the complaint. See Oltremari v. Kan. Soc. & Rehab. Serv., 871 F. Supp. 1331, 1333 (D. Kan. 1994). While *pro se* complaints are held to less stringent standards than pleadings drafted by lawyers, *pro se* litigants must follow the same procedural rules as other litigants. See Hughes v. Rowe, 449 U.S. 5 (1980); Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992). The Court may not assume the role of advocate for a *pro se* litigant. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

**Factual Background**

Summary judgment procedure is governed by D. Kan. Rule 56.1, which states that a memorandum or brief in support of a motion for summary judgment "shall begin with a section that

2

contains a concise statement of material facts as to which the movant contends no genuine issue exists." It also requires that an opposing memorandum begin with a section that contains a "concise statement of material facts as to which the party contends a genuine issue exists." Each fact must be numbered and refer with particularity to those portions of the record upon which the party relies. Also, in responding, the non-moving party shall state the "number" of each of movant's facts that is disputed. All facts on which either party relies must be organized by and contained within numbered paragraphs, and all operative facts must be captured within the parties' statement of uncontroverted facts and response thereto.

Plaintiff's opposition brief does not dispute any specific facts in defendants' memoranda. Furthermore, plaintiff does not specifically contradict defendants' factual assertions with reference to those portions of the record on which he relies. See D. Kan. Rule 56.1.[1] The Court recognizes that *pro se* litigants should not succumb to summary judgment merely because they fail to comply with

---

[1] D. Kan. Rule 56.1 provides as follows:

(b) Opposing Memorandum.

(1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.

(2) If the party opposing summary judgment relies on any facts not in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply.

the technical requirements involved in defending such a motion. See Woods v. Roberts, No. 94-3159, 1995 WL 65457, at *2 (10th Cir. Feb. 17, 1995); Hass v. U.S. Air Force, 848 F. Supp. 926, 929 (D. Kan. 1994). The Court has therefore searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment for defendants. Where supported by the record, the Court has included plaintiff's additional facts and construed them in the light most favorable to plaintiff.

At 9:30 p. m. on February 25, 2004, Willie Brown was driving a pickup in Miami County, Kansas. Deputy Scott Fisher of the Miami County Sheriff's Office stopped Brown's truck because the passenger-side headlight was not illuminated. Brown immediately pulled over to the right. Fisher approached the truck and asked Brown for his driver's license. Brown asked Fisher what probable cause he had to stop him. Fisher told Brown that one of his headlights was out. Brown again asked to see Brown's driver's license. Brown asked if he was under arrest. Fisher told Brown that he was not under arrest, but that if he did not produce a driver's license, he would arrest him. Brown refused to provide his driver's license. Fisher then went back toward his patrol car. As Fisher was walking toward his patrol car, plaintiff got out of his car to look behind his seat for his briefcase. Fisher turned and ordered Brown to get back inside his car. Brown complied, and Fisher then went to his patrol car and called for back-up.

Deputy Fisher returned to Brown's vehicle, where Brown was looking through his briefcase and trying to find his driver's license. Fisher told Brown that he was under arrest and told him to get out of his car. Fisher patted Brown down, handcuffed him behind his back and placed him in the

4

patrol car. Brown does not complain about how he was handcuffed or placed in the car.[2]

Fisher then returned to Brown's vehicle and asked the passenger to get out of the vehicle. Fisher picked up plaintiff's billfold from the open briefcase and returned to the patrol car. Fisher opened the billfold and found Brown's driver's license.

At that point, Trooper Joshua Weber arrived on the scene. Weber asked Brown about his driver's license, to which Brown responded, "Are we having curbside court?" Weber did not speak further with Brown, and had no physical contact with him. Weber then recovered an open beer can from the passenger compartment of Brown's truck and transported the can to the Miami County Jail.

The officers took Brown to the Miami County Jail, where Fisher asked Brown if he would post a $35 bond. Brown declined, stating that he had not committed any crime. Jailers then took Brown's photograph and fingerprints, and booked him into jail. A jailer delivered Brown a citation. Brown was released from jail the next morning at 7:30 a.m.

Under 42 U.S.C. § 1983, plaintiff alleges that defendants violated his rights under the Fourth, Fifth, Eight and Fourteenth Amendments of the United States Constitution. In particular, plaintiff alleges that defendants violated his Fourth Amendment rights when they arrested him without probable cause and then searched his car. Although plaintiff also alleges in conclusory fashion that defendants violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments, the complaint alleges no facts which implicate those rights.

## **Analysis**

Defendants assert that they are entitled to qualified immunity on plaintiff's Fourth

---

[2] Fisher was polite during the entire stop and did not physically mistreat Brown.

Amendment claim. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The affirmative defense of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Once the defense has been raised, plaintiff has the burden to establish both that defendants' actions violated a constitutional or statutory right and that the right was "clearly established" at the time of the relevant conduct. See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). If plaintiff satisfies this two-part burden, defendant must demonstrate that his actions were objectively reasonable in light of the law and the information he possessed at the time. See Martin v. Bd. of County Comm'rs, 909 F.2d 402, 405 (10th Cir. 1990).

Defendants argue that plaintiff has not met his burden to show that his arrest on February 25, 2004 violated his Fourth Amendment right to be free from unreasonable searches and seizures. Under settled case law, a police officer may make a warrantless arrest if he has probable cause to believe that an individual has committed or is committing a crime. See Thompson v. City of Lawrence, Kan., 58 F.3d 1511, 1515 (10th Cir. 1995); United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990). Probable cause exists if the arresting officer knows of facts and circumstances which are reasonably trustworthy and sufficient to lead a prudent person to believe that the individual has committed or is committing an offense. See Thompson, 58 F.3d at 1515. This determination must be made "in light of circumstances and facts as they would have appeared to a prudent,

6

cautious, trained police officer." Maher, 919 F.2d at 1485-86.[3]

Here, defendants have presented evidence that Fisher stopped Brown's vehicle at 9:30 p. m. because he had observed that the passenger-side front headlamp was not working. This was a traffic infraction, which provides sufficient grounds to support the initial stop. See Kan. Stat. Ann. §§ 8-1705, 1728(a). Further, Brown does not dispute that he refused to produce his driver's license, in violation of Kan. Stat. Ann. § 8-244, which provides as follows:

> Every licensee shall have his or her driver's license in his or her immediate possession at all times when operating a motor vehicle, *and shall display the same, upon demand* of any officer of a court of competent jurisdiction or any peace officer, examiner or officer of the division of vehicles. However, no person charged with violating this section shall be convicted if such person produces in court or the office of the arresting officer a driver's license theretofore issued to such person and valid at the time of arrest.

Kan. Stat. Ann. § 8-244 (emphasis added).

Kansas law authorizes arrests under several specified circumstances. Specifically, Kan. Stat. Ann. § 22-2401 provides as follows:

> A law enforcement officer may arrest a person under any of the following circumstances: * * *

---

[3] In civil rights cases which challenge the validity of a warrantless arrest, the Tenth Circuit has noted that the question of probable cause is ordinarily one of fact for the jury:

> It is true that the issue of probable cause ordinarily is for the judge rather than the jury. That is because the issue usually arises in the context of a motion to suppress evidence, which the judge decides. But where the issue arises in a damage suit, it is . . . a proper issue for the jury if there is room for a difference of opinion. The underlying issue in deciding whether the police had probable cause to do what they did is reasonableness, which is also the underlying issue in deciding negligence-a classic jury issue.

DeLoach v. Bevers, 922 F.2d 618, 623 (10th Cir. 1990). In this case, however, the material facts are undisputed and compel a finding in favor of defendants.

> (c) The officer has probable cause to believe that the person is committing or has committed:
>> (1) A felony; or
>> (2) a misdemeanor, and the law enforcement officer has probable cause to believe that:
>> (A) The person will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested;
>> (B) the person may cause injury to self or others or damage to property unless immediately arrested; or
>> (C) the person has intentionally inflicted bodily harm to another person.
>
> (d) Any crime, except a traffic infraction or a cigarette or tobacco infraction, has been or is being committed by the person in the officer's view.

The Kansas law which requires a driver to display his driver's license, Kan. Stat. Ann. § 8-244, is not categorized as a "traffic infraction" under Kansas law. See Kan. Stat. Ann. § 21-3105(2); Kan. Stat. Ann. § 8-2118(c). Therefore, when plaintiff refused to produce his driver's license, Fisher had authority to arrest plaintiff because in his view, defendant had committed a crime, other than a traffic infraction. See Kan. Stat. Ann. § 22-2401(d).

In Atwater v. City Of Lago Vista, 532 U.S. 318, 354 (2001) the Supreme Court held that "[i[f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." In Atwater, an officer observed plaintiff driving without a seat belt restraining her or her children. The officer arrested her for violating the Tex. Transp. Code Ann. § 545.413 (1999), which makes it a misdemeanor to drive or allow children to ride in a vehicle without wearing an available seatbelt. The Supreme Court found that the arrest satisfied constitutional requirements. Plaintiff did not dispute that the officer had probable cause to believe that she had committed a crime in his presence; she admitted that neither she nor her children were wearing seatbelts, as required by Texas law. The Court found that the officer was authorized to make a custodial arrest without balancing costs and

8

benefits or determining whether plaintiff's arrest was in some sense necessary. The <u>Atwater</u> Court also noted that the arrest was not made in an "extraordinary manner, unusually harmful to [plaintiff's] privacy or . . . physical interests." <u>Id.</u> (quoting <u>Whren v. United States</u>, 517 U.S. 806, 818 (1996). The Court stated that above all else, whether a search or seizure is "extraordinary" turns above all else, on the manner in which it is executed. <u>Id.</u> The Court stated that plaintiff's arrest was surely humiliating, but it was no more harmful to privacy or physical interests than the normal custodial arrest. Plaintiff was handcuffed, placed in a squad car and taken to the local police station, where officers asked her to remove her shoes, jewelry and glasses, and to empty her pockets. Defendants then took her photograph and placed her in a cell, alone, for about an hour. Defendants then took plaintiff before a magistrate and released her on bond. The Court found that the arrest and booking were inconvenient and embarrassing to plaintiff, but not so extraordinary as to violate the Fourth Amendment. <u>Id</u>. at 348 (rejecting line between "jailable" and "fine-only offenses" because officer on street may not be able to differentiate the two).

As in <u>Atwater</u>, the officer here had probable cause to believe that plaintiff had committed a crime, albeit a minor one. Plaintiff does not allege or cite any evidence that Fisher conducted the arrest in an extraordinary manner. The uncontroverted facts show that the arrest did not violate plaintiff's Fourth Amendment rights.

Plaintiff also alleges that the officers' search of the vehicle violated his Fourth Amendment rights. Defendants assert that the search of plaintiff's car did not violate the Fourth Amendment because it was a lawful search incident to arrest. This Court recently reviewed the standard for an automobile search incident to an arrest. <u>See</u> <u>McCormick v. Hadl</u>, No. 03-2630-KHV, 2005 WL 1799260 (D. Kan., June 28, 2005).

Law enforcement officers must ordinarily obtain a warrant, based on probable cause, before conducting a search. See New York v. Belton, 453 U.S. 454, 457 (1981). The Supreme Court has recognized an exception to this rule where officers conduct a warrantless search incident to a lawful arrest. See Chimel v. California, 395 U.S. 752, 762-63 (1969). In the context of a lawful arrest of an occupant or recent occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle and examine the contents of any containers found within the passenger compartment as a contemporaneous incident of arrest. Belton, 453 U.S. at 460; see United States v. Franco, 981 F.2d 470, 473 (10th Cir. 1992) (discussing Belton in context of recent occupant). In Franco, the Tenth Circuit held that the search of defendant's automobile was incident to his arrest because defendant "exercised control over his vehicle and its contents at the time of the arrest and during the commission of the offense, and was its immediate occupant." Id. Belton is based on the rationale that the search prevents the arrestee from reaching for weapons or destructible evidence. See id. at 472.

In 2004, the Supreme Court further defined when officers may search an automobile incident to a lawful arrest. See Thornton v. United States, 541 U.S. 615 (2004). In Thornton, an officer followed defendant and determined that his license tags had been issued for a car model other than what he was driving. See id. at 618. Before the officer had an opportunity to pull him over, however, defendant parked and got out of his car. See id. The officer saw defendant get out of the car, then parked his own car, accosted defendant and requested his driver's license. See id. Because defendant appeared nervous, the officer asked if he could pat him down. See id. In defendant's pockets, the officer found bags of marijuana and cocaine. See id. The officer handcuffed defendant, told him that he was under arrest and placed him in the back seat of the patrol car. The officer then

searched defendant's car and found a handgun under the driver's seat. See id.

The Fourth Circuit Court of Appeals noted defendant's concession that he was in "close proximity, both temporally and spatially," to his vehicle. It therefore found that the car was within his immediate control and that the search was reasonable under Belton. See id. at 2130. The Supreme Court affirmed. It first noted that Belton did not depend on whether the arrestee got out of the vehicle at the officer's direction or whether the officer initiated contact while defendant remained in the car. Id. at 2131. The Supreme Court reasoned that the stress and uncertainty of an arrest "is no less merely because the arrestee exited his car before the officer initiated contact, nor is an arrestee less likely to attempt to lunge for a weapon or to destroy evidence if he is outside of, but still in control of, the vehicle." Id. The Supreme Court emphasized that Belton applies to both "occupants" and "recent occupants" of a vehicle. It therefore concluded that even though not all contraband in the passenger compartment may be readily accessible to a recent occupant, "[t]he need for a clear rule . . . justifies the sort of generalization which Belton enunciated." Id. at 2132. The Supreme Court held that "[o]nce an officer determines that there is probable cause to make an arrest [of a recent occupant of a vehicle], it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." Id. It further held that "[s]o long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle incident to the arrest." Id. An arrestee's status as a "recent occupant" may turn on his temporal and spatial relationship to the car at the time of the arrest and search. Id. at 2131.

In this case, Fisher had probable cause to arrest plaintiff, who was a recent occupant of the vehicle. It was therefore reasonable for the officers to search the passenger compartment. Fisher and Weber are entitled to summary judgment on plaintiff's Fourth Amendment claims.

11

The Court notes that although plaintiff has sued Miami County, Kansas, he has not alleged that the County violated his rights through a county custom, practice or policy or by the act of a final decision-maker. County liability under Section 1983 does not automatically spring from the acts of county employees, Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986), but results when the county itself causes the wrong. Such wrongs may arise from official policy, e.g. "acts which the [county] has officially sanctioned or ordered," or from the act of an ultimate county decision-maker. Id. at 479-80. Plaintiff has not alleged any facts as to county policy or acts by county decision-makers. Plaintiff is therefore ordered to show cause in writing on or before March 10, 2006 why the Court should not dismiss his claims against Miami County.

**IT IS THEREFORE ORDERED** that defendant Scott Fisher's Motion For Summary Judgment (Doc. #21) filed September 16, 2005 and defendant Joshua Weber's Motion For Summary Judgment (Doc. #25) filed September 19, 2005 be and hereby are **SUSTAINED**.

**IT IS FURTHER ORDERED that plaintiff shall show cause in writing on or before March 10, 2006 why the Court should not dismiss his claims against Miami County**.

Dated this 27th day of February, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge